SARTAIN, Judge.
Plaintiff, Jerry Lee Nedd, an inmate at the state penitentiary at Angola, brought this action for serious personal injuries sustained as a result of an attack with a cane knife by a fellow inmate, McKinley Peterson, on January 27, 1968. Several of Nedd’s fingers were cut off. He alleged negligence on the part of the penitentiary officials or employees for failing to keep Nedd and Peterson in separate areas of Angola because of a prior serious incident between the two which occurred on August 10, 1958, also at the penitentiary.
The trial judge dismissed plaintiff’s suit, holding that the penitentiary did not have actual knowledge of the risk of injury to Nedd and, because of the long period of time after the first incident and the regularity of fights between inmates, there was no basis for finding constructive knowledge of this particular risk. The judge also found that the two prisoners had been living in the same dormitory area for nearly three months prior to the attack on which this action is based and Nedd had failed to take adequate steps to put the penitentiary on notice of his concern, although he had the opportunity to do so. We agree with this latter finding and inasmuch as the state specifically raised the defense of contributory negligence, based on Nedd’s inaction, we affirm the judgment of the trial court.
The pertinent history in this case reveals that both Nedd and Peterson had been in Angola for at least two years prior to August 10, 1958. On that date, at about 11:00 P.M., Peterson attacked the sleeping Nedd with an iron pipe and fractured Nedd’s skull. The surgery on Nedd was performed at Charity Hospital in New Orleans. On December 12, 1958, Peterson entered a plea of guilty to the charge of aggravated battery in the Twentieth Judicial District Court and received a sentence of five .years. The two men were separated at Angola thereafter and Nedd was released on September 7, 1962. Peterson was released on November 13, 1963.
Peterson was returned to Angola for armed robbery on April 9, 1965. Nedd was returned for possession of marijuana on January 12, 1967. During Nedd’s first few weeks, he went through the Admission Unit and a classification procedure. By contact with other inmates he was able to find out where Peterson was then assigned, an area known as Line 5, Hickory II. When Nedd met the Classification Board, he voiced his concern about where he might be assigned. The Chief of Security, Major Robert G. Bryan, was on the board and testified at trial that Nedd did not want to be assigned to Line 5, Hickory II, because of his apprehension about another prisoner or prisoners. Major Bryan did not recall whether Nedd had mentioned Peterson by name but in any event he thought that Nedd was merely attempting to be assigned to a minimum security camp and did not believe that Nedd was truly concerned about his safety or that the matter required any further investigation. Nedd testified at one point that he mentioned Peterson by name and described him further as the fellow who got five years for hitting him in the head. Nedd said Major Bryan indicated that he remembered the prior attack, but Major Bryan said he did not in fact remember *494 it although he probably heard about it at the time it happened. The prior prison record on Nedd did not contain a report of the incident in 1958. Nevertheless, Major Bryan acceded to Nedd’s request and assigned him to a cell block, which resulted in fewer privileges than were accorded to prisoners in medium security areas. Nedd testified that Major Bryan told him to write a letter when he was later transferred if he was still concerned about the matter and he might be made a trustee and placed in a minimum security camp.
Nothing further transpired until October of 1967. At that time Peterson was transferred to Camp A. About two weeks later on November 1, Nedd was also transferred from his cell block to Camp A. He had learned of Peterson’s transfer. During the transfer process, Nedd was at the Control Center and said he saw Major Bryan passing by. He testified that he had a very brief conversation with him, as Major Bryan appeared to be in a hurry, and said, “Sir, I can’t go over there. That fellow is over there.” and that Major Bryan had responded, “You go where you are sent, not where you want.” Major Bryan testified that he did not remember this exchange or even seeing Nedd at the Control Center. Nedd admitted that such a complaint might easily be disregarded because a lot of inmates would say something just to avoid going where they are being sent.
For the next three months, Nedd and Peterson were living on opposite sides of a divided dormitory building, with Peterson on side A-l and Nedd on side A-2. The sides could be separated by locked gates but the gates were usually open and there was generally free passage from one side to the other. Nedd testified that he sometimes went to visit friends in A-l but avoided Peterson and that Peterson sometimes came to A-2. Although they never spoke, Peterson gave Nedd some hard looks on occasion. Then on January 25, 1968, Peterson attacked Nedd with a cane knife while Nedd was sitting on his bed. He tried to defend himself with a 2 X 4 bed slat but his fingers were severed. (The record supports the finding by the trial judge that Nedd was not an aggressor.)
We do not deem it necessary to determine whether the penitentiary personnel were negligent, as alleged by plaintiff, for failing to have a record of Nedd’s involvement in the incident in 1958, for failing to take Nedd’s story seriously at the Classification Board hearing and at least inquire further, and thus failing to see that Nedd and Peterson were kept apart because of the potential danger of a conflict.
Even by Nedd’s account, his only attempt to reiterate his concern about Peterson was a hasty verbal exchange with Major Bryan at the Control Center and he admitted that Major Bryan could easily have missed the importance of his statement and disregarded it. He did not write a letter explaining his fears, although he said Major Bryan had told him at the Classification Board hearing to do so. And he apparently did not mention the matter to any of his supervisory personnel during the period of November 1, 1967, to January 25, 1968. The only reason Nedd gave for his inaction was his fear of reprisal for insubordination and under the circumstances that does not seem to us to have been a sufficient deterrent. Moreover, there was testimony by prison officials that requests for transfer for one reason or another were a frequent and routine matter and a hearing on the request could easily be arranged either through a supervisor in the prisoner’s area or by a letter to the Classification Board.
We find that Nedd remained in his dangerous circumstances as much because of his own silence and inaction as because of any alleged failure on the part of the prison personnel. His continuing vulnerability was attributable to his own fault.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.